UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

PHAILAT CHANTHAMANY,                                                    Petitioner,

v.                                                    Civil Action No. 5:26-cv-134-DJH

SAMUEL OLSON, Field Office Director,
Chicago Field Office, U.S. Immigration and
Customs Enforcement et al.,                                          Respondents.

* * * * *

## MEMORANDUM OPINION AND ORDER

Petitioner Phailat Chanthamany, a lawful permanent resident of Wisconsin currently detained in the Western District of Kentucky, seeks a writ of habeas corpus pending appeal of his cancellation of removal.  He alleges that his detention violates the Due Process Clause of the Fifth Amendment.  (Docket No. 4)  The parties agreed to forgo a show-cause hearing given the absence of a material factual dispute (*see* D.N. 5), and they have submitted briefing setting out their respective legal arguments (D.N. 7; D.N. 8; D.N. 9; D.N. 11).  After careful consideration, the Court will grant in part Chanthamany's amended petition for the reasons explained below.

**I.**

Chanthamany is a native and citizen of Laos.  (D.N. 4, PageID.158 ¶ 33; *see* D.N. 1-2, PageID.99)  He entered the United States in 1983 as a ten-year-old refugee and has lived in the United States since then.  (D.N. 4, PageID.158 ¶ 35)  Chanthamany became a lawful permanent resident in 1984.  (*Id.*, PageID.159 ¶ 35)  He has "held a variety of jobs," most recently working in Milwaukee, Wisconsin, "making Harley Davidson motorcycle parts."  (*Id.* ¶ 36)  In 2019, Chanthamany was convicted in Wisconsin state court of drug-trafficking offenses.  (*See* D.N. 1-2, PageID.102)  He was also convicted in Wisconsin in 2022 of "Manufactur[ing]/Deliver[ing]

1

Amphetamine." (*Id.*)  On September 10, 2024, while Chanthamany was in state custody, U.S. Immigration and Customs Enforcement (ICE) placed him in removal proceedings via a Notice to Appear.  (*Id.*, PageID.99)  The Notice stated that Chanthamany "ha[d] been admitted to the United States[] but [was] removable" pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) (*id.*), which provides that "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct . . . , is deportable." Chanthamany was released from state custody on "[e]xtended [s]upervision" on May 2, 2025. (D.N. 1-3, PageID.104)  ICE then immediately took him into custody.  (*See* D.N. 4, PageID.160 ¶ 38; D.N. 7, PageID.174)

On May 16, 2025, an immigration judge denied Chanthamany release on bond, stating that he was "subject to mandatory detention" under 8 U.S.C. § 1226(c).  (D.N. 7-1, PageID.182)  On July 16, 2025, an immigration judge granted Chanthamany cancellation of removal, which terminated his removal proceedings.  (*See* D.N. 1-4, PageID.105–08)  The government appealed that decision to the Board of Immigration Appeals (BIA) on August 13, 2025.  (*See* D.N. 1-6, PageID.115–18)  On January 12, 2026, the BIA directed the parties to submit written briefs by February 2, 2026.  (*See* D.N. 1-7, PageID.123)  The government did not file a brief.  (*See* D.N. 4, PageID.162 ¶ 45; D.N. 7, PageID.175)  Chanthamany moved to dismiss the government's appeal on May 8, 2026.  (*See* D.N. 1-8, PageID.126–30)  The government's appeal and Chanthamany's motion remain pending before the BIA.  (*See* D.N. 4, PageID.163 ¶ 47; D.N. 7, PageID.175) Chanthamany has been detained since ICE took him into custody and is currently detained at the Christian County Jail in Hopkinsville, Kentucky.  (*See* D.N. 1-9, PageID.141)

Chanthamany seeks a writ of habeas corpus against the Chicago ICE Field Office Director, Department of Homeland Security (DHS) Secretary Markwayne Mullin, Acting U.S. Attorney

General Todd Blanche, Christian County Sheriff Tyler DeArmond, and Christian County Jailer Adam Smith. (*See* D.N. 4, PageID.152–53 ¶¶ 17–22) Chanthamany alleges that his detention violates due process under the Fifth Amendment. (*See id.*, PageID.167 ¶¶ 55–59) He seeks release under an order of supervision. (*See id.*, PageID.150 ¶ 8) Respondents argue that Chanthamany is mandatorily detained under 8 U.S.C. § 1226(c) and that his detention does not violate due process.[1] (*See* D.N. 7, PageID.176–80)

## II.

### A.    Immigration and Nationality Act

The parties agree that 8 U.S.C. § 1226(c) applies to Chanthamany's detention. (*See id.*, PageID.176; D.N. 8, PageID.187) The statute provides that "the 'Attorney General shall take into custody any alien' who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (quoting § 1226(c)(1)). As applicable here, § 1226(c) provides that

> [t]he Attorney General shall take into custody any alien who—
> (A) is inadmissible by reason of having committed any offense covered in [8 U.S.C. § 1182(a)(2)] . . . .

8 U.S.C. § 1226(c)(1)(A). Section 1182(a)(2) states that a noncitizen convicted of "a violation of . . . any law or regulation of a State . . . relating to a controlled substance (as defined in section 802 of Title 21)[]" is inadmissible. 8 U.S.C. § 1182(a)(2)(A)(i)(II). In light of Chanthamany's conviction for methamphetamine offenses, § 1226(c) governs his detention. *See* 21 U.S.C. §§ 802(6), 812(a)(3) sched. III.

---

[1] Respondents do not contest that the Court has jurisdiction to review Chanthamany's petition (*see generally* D.N. 7; D.N. 9). *See Lopez v. Olson*, 815 F. Supp. 3d 576, 580 (W.D. Ky. 2025) ("Section 2241 [of title 28] confers jurisdiction [on district courts] to hear habeas corpus challenges to the legality of a noncitizen's detention." (citing *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004))). Nor do Respondents argue whether Chanthamany must exhaust administrative remedies. (*See generally* D.N. 7; D.N. 9) The Court therefore will not address those issues.

3

**B.     Due Process**

Chanthamany argues that his "prolonged and indefinite detention . . . violates his right to due process." (D.N. 4, PageID.167 ¶ 58; *see also* D.N. 8, PageID.188 (arguing that "at some point, prolonged detention pursuant to section 1226(c) violates a noncitizen's due process rights")) Citing *Demore v. Kim*, 538 U.S. 510 (2003), Respondents argue that Chanthamany's detention under § 1226(c) does not violate due process and that he is not entitled to release in any event. (*See* D.N. 7, PageID.178–80; D.N. 9, PageID.203–05)

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings. *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam) (citation omitted). "A statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he procedural protections in place for aliens detained under § 1226(c) are 'almost nonexistent,' as they provide no individualized review of the need for detention and no mechanism for the detainee's release." *M.T.B. v. Byers*, No. 2:24-028-DCR, 2024 WL 3881843, at *3 (E.D. Ky. Aug. 20, 2024) (quoting *Black v. Decker*, 103 F.4th 133, 152 (2d Cir. 2024), *rehearing en banc denied sub nom.*, *Black v. Almodovar*, 156 F.4th 171 (2d Cir. 2025), *cert. granted sub nom.*, *Genalo v. Black*, No. 25-886, 2026 WL 1718025 (U.S. June 15, 2026)). "[T]he only procedural protection available appears to be" a *Joseph* hearing, where a noncitizen may "contest that he committed the crime that renders him subject to mandatory detention." *Id.* (citing *Black*, 103 F.4th at 152); *see generally In re Joseph*, 22 I&N Dec. 799 (B.I.A. 1999). Additionally, the Supreme Court's opinions in *Demore* and *Jennings* "instruct that (1) due process does not require an initial bond determination for those detained under section 1226(c), and (2) section 1226's text cannot be construed to require a bond

hearing after any particular fixed period of detention." *Black*, 103 F.4th at 142. But *Demore* and *Jennings* left "open the question whether prolonged detention under section 1226(c) without a bond hearing will at some point violate an individual detainee's due process rights." *Id.* (emphasis omitted). The Second and Third Circuits, and at least one court in the Sixth Circuit, have held that prolonged detention under § 1226(c) without a bond hearing may violate due process where a *Joseph* hearing would be futile or the detention has become unreasonably prolonged. *See id.* at 151–55; *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 206 (3d Cir. 2020); *M.T.B.*, 2024 WL 3881843, at *3–4. This Court likewise concludes that at some point, "due process places some limits on detention under section 1226(c) without a bond hearing." *Black*, 103 F.4th at 145 (emphasis omitted); *see M.T.B.*, 2024 WL 3881843, at *3–4 (concluding that a noncitizen detained under § 1226(c) for nineteen months was entitled to a bond hearing); *cf. Lopez-Campos v. Raycraft*, 175 F.4th 713, 734 (6th Cir. 2026) ("[D]etention without an individualized bond hearing can become constitutionally impermissible, even if the detention has a theoretical end point." (citations omitted)) (discussing due process as to detention under § 1226(a)).

To determine whether a due-process violation has occurred, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See, e.g.*, *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *8–9 (W.D. Ky. Nov. 4, 2025); *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *6–7 (W.D. Ky. Sep. 19, 2025); *M.T.B.*, 2024 WL 3881843, at *3–4. Under the *Mathews* test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Alonso*, 2025 WL 3083920, at *8 (citation omitted); *see Mathews*, 424 U.S. at 335.  Here, "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment."  *Black*, 103 F.4th at 151 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)).  ICE has detained Chanthamany for fifteen months (*see* D.N. 4, PageID.160 ¶ 38; D.N. 7, PageID.174), far longer than the "relatively short duration" contemplated in *Demore*.  *Black*, 103 F.4th at 151; *see id.* at 137 (noting that the two petitioners in *Black* had been detained for seven and twenty-one months under § 1226(c)); *see also Demore*, 538 U.S. at 529 ("[I]n 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days." (citation omitted)).  The first *Mathews* factor therefore weighs in Chanthamany's favor.  *See Black*, 103 F.4th at 151–52.

Second, the risk of erroneously depriving Chanthamany of his liberty is high.  A *Joseph* hearing would be futile because Chanthamany was convicted of drug offenses and completed a term of imprisonment (*see* D.N. 1-2, PageID.102; D.N. 1-3, PageID.104).  *See M.T.B.*, 2024 WL 3881843, at *3 (finding that a *Joseph* hearing was "not a viable option" for the petitioner because he had pleaded guilty and "served a lengthy custodial sentence").  In the absence of other procedural safeguards, the second factor weighs heavily in Chanthamany's favor.  *See id.*; *Black*, 103 F.4th at 153.  "The most obvious" safeguard is a bond hearing.  *Black*, 103 F.4th at 153.

Third, the Court "recognizes that the United States does have a strong interest in ensuring [that] noncitizens do not harm their community and that they appear for future immigration proceedings."  *Barrera*, 2025 WL 2690565, at *7 (citation omitted); *see Black*, 103 F.4th at 153 (observing the government's "well-established" interests of "ensuring the noncitizen's appearance at proceedings" and "protecting the community from noncitizens who have been involved in

crimes that Congress has determined differentiate them from others" (citing *Demore*, 538 U.S. at 518–21, 527–28)). But a "routine bond hearing before an [immigration judge]" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that DHS can readily follow here." *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 493 (E.D.N.Y. 2025). Thus, providing a bond hearing does not "undercut" the government's interests. *Black*, 103 F.4th at 153. All three *Mathews* factors thus weigh in Chanthamany's favor.

To the extent that Respondents rely on *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024) (*see* D.N. 9, PageID.199–205), the Court finds that case unpersuasive. In *Banyee*, the Eighth Circuit held that "[d]ue process imposes no time limit on detention pending deportation" under § 1226(c). 115 F.4th at 930. The panel cited *Demore* for the proposition that "detention during deportation proceedings is constitutionally valid." *Id.* at 931 (citation modified) (quoting *Demore*, 538 U.S. at 523). Also relying on *Demore*, the panel stated that "nothing suggests that length [of detention] determines legality." *Id.* at 932 (discussing *Demore*, 538 U.S. at 528–29). But in *Demore*, the Supreme Court observed that "not only does detention [under § 1226(c)] have a definite termination point, in the majority of cases it lasts for less than the 90 days [the Court] considered presumptively valid in *Zadvydas*." *Demore*, 538 U.S. at 529; *see id.* n.12 (emphasizing "[t]he very limited time of the detention at stake under § 1226(c)"); *see also Zadvydas*, 533 U.S. at 682 ("constru[ing] [8 U.S.C. § 1231(a)(6)] to contain an implicit 'reasonable time' limitation" as to noncitizens detained "indefinitely" following a final order of removal (emphasis omitted)). Thus, "the apparent brevity of detentions pending removal" bears on the detention's legality. *Black*, 103 F.4th at 144. Moreover, *Banyee* characterized *Demore* as establishing a "bright-line rule" that "the government can detain an alien for as long as deportation proceedings are still 'pending.'" *Banyee*, 115 F.4th at 933 (emphasis omitted) (quoting *Demore*, 538 U.S. at 527). But

no such rule exists: the Supreme Court has "not foreclose[d] as-applied challenges—that is, constitutional challenges to applications of" § 1226(c). *Nielsen v. Preap*, 586 U.S. 392, 420 (2019); *see Black*, 103 F.4th at 143–44 (noting that *Demore* "upheld the facial constitutionality of detention under section 1226(c) without a bond hearing"); *see also Almodovar*, 156 F.4th at 198 (Chin and Carney, JJ., in support of the denial of rehearing en banc) (noting "the government's consistent representations to the [Supreme] Court in the decades since *Demore*" that *Demore* allows as-applied challenges to § 1226(c)). For these reasons, the Court does not find *Banyee* instructive.

Because all three *Mathews* factors weigh in Chanthamany's favor, the Court concludes that his fifteen-month detention without a bond hearing is unreasonably prolonged and violates due process. *See Black*, 103 F.4th at 155; *M.T.B.*, 2024 WL 3881843, at *4.

## C.    Remedy

Chanthamany seeks release under an order of supervision. (*See* D.N. 4, PageID.150 ¶ 8) The Court presumes that Chanthamany refers to an order granted to noncitizens following an order of removal and the expiration of a statutorily defined "removal period." *See Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021); *see also* 8 U.S.C. § 1231(a)(1)(A) (defining "removal period"). But Chanthamany was not ordered removed; he was instead granted cancellation of removal. (*See* D.N. 1-4, PageID.105–08) The Court is aware of no authority authorizing release under an order of supervision based on prolonged detention pursuant to § 1226(c). Rather, a bond hearing is "[t]he most obvious" remedy where a *Joseph* hearing would be futile. *Black*, 103 F.4th at 153; *see M.T.B.*, 2024 WL 3881843, at *3–4.

Chanthamany nonetheless cites several sources in support of his position. First, he asserts that "[t]he *Mathews* factors weigh in favor of release." (D.N. 8, PageID.191) But as explained

above, and consistent with the Second Circuit's opinion in *Black*, the *Mathews* factors support providing a bond hearing. Second, Chanthamany points to *Zadvydas* "and its instruction to consider the likelihood of whether the noncitizen will be removed." (*Id.*, PageID.191–92 (citing *Zadvydas*, 533 U.S. at 690)) But *Zadvydas* concerned indefinite detention following an order of removal under 8 U.S.C. § 1231(a)(6), *see* 533 U.S. at 682, and no removal order is at issue here. *See Almodovar*, 156 F.4th at 200 ("*Zadvydas*'s focus on the foreseeability of removal—and its limiting construction of § 1231(a)(6) as authorizing detention only when removal is reasonably foreseeable—does not address or settle the due process concerns raised by prolonged detention under § 1226(c).").

Third, Chanthamany asserts that "a due process problem arises" where, as here, an appeal to the BIA "trigger[s] custody" even though an immigration judge granted relief. (D.N. 11, PageID.211) Chanthamany cites recent district-court decisions holding that the automatic-stay provision at 8 C.F.R. § 1003.19(i)(2) (regarding bond decisions) violates due process (*see id.*, PageID.212–13 (collecting cases)).[2] *See, e.g.*, *Günaydın v. Trump*, 784 F. Supp. 3d 1175, 1190 (D. Minn. 2025) (holding that 8 C.F.R. § 1003.19(i)(2) violates due process). That regulation does not apply to an appeal of cancellation of removal, however. *See* 8 C.F.R. § 1003.19(d) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding."); *Hussein v. Edwards*, 823 F. Supp. 3d 908, 913 (W.D. Wis. 2026) ("The details of the bond procedure are set forth at 8 C.F.R. §§ 236.1, 1003.19 and 1236.1."). Additionally, courts have held that 8 C.F.R. § 1003.19(i)(2) violates due process—and have

---

[2] Chanthamany also discusses 8 C.F.R. § 1003.39. (*See* D.N. 11, PageID.213) But that regulation states that "the decision of the Immigration Judge becomes final upon waiver of appeal [to the BIA] or upon expiration of the time to appeal if no appeal is taken." 8 C.F.R. § 1003.39. Because neither situation is at issue here, § 1003.39 is irrelevant.

ordered release—on the ground that only the government can invoke it and thus effectively "nullif[y]" a bond decision indefinitely and without additional reasons. *J.M.P. v. Arteta*, 807 F. Supp. 3d 265, 301 (S.D.N.Y. 2025); *see, e.g.*, *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 31 (D. Mass. 2025) (explaining how the automatic-stay provision permits "months- or years-long detention"); *id.* at 34 (ordering release); *Günaydın*, 784 F. Supp. 3d at 1187 ("[T]he only individuals adversely affected by [8 C.F.R. § 1003.19(i)(2)] are those detainees who have already prevailed in a judicial hearing.  The regulation only confers on agency officials the right to invoke an automatic stay and, presumably, agency officials would not act to stay favorable decisions."); *id.* at 1191 (ordering release).

Here, the government's appeal of the cancellation of removal stayed the immigration judge's decision pursuant to a different regulation. *See* 8 C.F.R. § 1003.6(a) (providing that "the decision in any proceeding . . . from which an appeal to the [BIA] may be taken shall not be executed . . . while an appeal is pending").  But unlike 8 C.F.R. § 1003.19(i)(2), 8 C.F.R. § 1003.6(a) applies when either the government or the noncitizen appeals an immigration judge's decision. *Compare id.* (making no distinction as to a party's prerogative to stay an immigration judge's decision), *with* 8 C.F.R. § 1003.19(i)(2) ("In any case in which DHS has determined that an alien should not be released . . . , any order of the immigration judge authorizing release . . . shall be stayed.").  Although the government's appeal under 8 C.F.R. § 1003.6(a) has prolonged Chanthamany's detention, that regulation does not "permit[] an agency official who is also a participant in the adversarial process to unilaterally override the immigration judge's decision[]" as does 8 C.F.R. § 1003.19(i)(2). *Günaydın*, 784 F. Supp. 3d at 1187; *see id.* (describing 8 C.F.R. § 1003.19(i)(2) as "anomalous in [the] legal system" and observing "no other instance in any context in which a non-prevailing party is granted such authority"); *Sampiao*, 799

10

F. Supp. 3d at 33 ("The automatic stay regulation . . . does not require ICE to demonstrate any likelihood of success on the merits of its appeal to the BIA or any risk of irreparable injury.  The regulation simply gives the losing party a stay as of right.").  Chanthamany points to no authority, and the Court is aware of none, deeming 8 C.F.R. § 1003.6(a) unconstitutional based on similar concerns.    (*See* D.N. 11, PageID.211–13)    To the extent that an appeal has prolonged Chanthamany's detention, the Court has addressed that issue above via the *Mathews* factors.

Finally, Chanthamany notes that he won cancellation of removal but that the petitioners in *Black* appealed the immigration judges' denials of relief; he argues that the petitioners there "benefited from the lack of finality . . . , whereas [Chanthamany] is harmed by" the pending appeal (*id.*, PageID.214).  *See Black*, 103 F.4th at 139–40.  But the Second Circuit's opinion focused on the harm caused by prolonged detention generally and did not suggest that the remedy would have been different had the government appealed the immigration judges' decisions.  *See id.* at 143–55.

In sum, the Court concludes that a bond hearing is the appropriate remedy for Chanthamany's prolonged detention.  *See id.* at 153; *M.T.B.*, 2024 WL 3881843, at \*4.  "[T]o continue depriving [Chanthamany] of [his] liberty," the government must show at the bond hearing by clear and convincing evidence that he poses a flight risk or danger to the community.  *Black*, 103 F.4th at 155; *see M.T.B.*, 2024 WL 3881843, at \*5 (collecting cases for the proposition that "the government must justify continued detention by clear and convincing evidence").

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

11

**ORDERED** as follows:

(1)    Chanthamany's amended habeas petition (D.N. 4) is **GRANTED** in part. Respondents are **DIRECTED** to provide Chanthamany with a bond hearing within **seven (7) days** of entry of this Order.  To continue detaining Chanthamany, the government must demonstrate during the bond hearing by clear and convincing evidence that Chanthamany poses a flight risk or danger to the community.  Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **August 13, 2026**.

(2)    Upon receipt of the notice of compliance, this matter will be **CLOSED**.

August 6, 2026

**David J. Hale, Chief Judge**
**United States District Court**

12